**MULLEO, d. b. a. JOHN'S CAFE, Appellant, v. BOWERS, Tax Commr., Appellee.**

Board of Tax Appeals.

No. 26539. Decided November 8, 1954.

Jack Spira, bookkeeper, for appellant.

C. William O'Neill, Atty. Genl., by William E. Herron, Asst. Atty. Genl., Columbus, for appellee.

**OPINION**

This is an appeal from a final sales tax assessment order made by the tax commissioner on April 29, 1954. The order made covers an audit

period from September 10, 1945, to December 31, 1952. The amount of the assessment is $1,385.87 plus a penalty of $207.88—total, $1,593.75.

The cause now comes on for further consideration and final disposition upon the tax commissioner's transcript, appellant's notice of appeal, the record of a hearing had before this board on July 8, 1954, certain exhibits and briefs.

A letter of the Department of Taxation (Sales Tax Division) to a departmental examiner under date of November 17, 1952, reads in part: "In May of 1951 a form letter No. 490 was mailed to him regarding no stamp purchases and no returns being filed. On June 4 of that year he purchased $100.00 worth of stamps, apparently as a result of the form letter. This is the only stamp purchase which he has made from January 1, 1950, to the present time. We have no record of his ever having filed a return since starting in business." It was this rather flagrant disregard of the Sales Tax Law requirements which prompted the making of this audit. The taxpayer did not appear at the hearing before this board. He was represented by his bookkeeper at such hearing. The board's Rule 21 was disregarded, and as a result the record is such as is usually found in like instances. The rule should have been followed for the benefit of the taxpayer, if for no other reason.

Before stating such facts as are pertinent, we shall set forth the errors complained of in appellant's notice of appeal:

(1) "The Tax Commissioner failed to consider the records tendered in support of purchases made during the period for which the assessment is levied, particularly invoices and records pertaining to whiskies purchased and sold as well as invoices and records pertaining to sale of draught beer and bottle beer and food purchases and sales.

(2) "The Tax Commissioner failed to consider record evidence in support of actual percentage mark up over costs as applied to the several items purchased and sold by vendor."

Appellant is a tavern operator catering to family patronage. He sells the usual articles sold by such operators. It is evident that the taxpayer kept no books other than an unbroken down record of gross sales and an itemized list of his purchases. He did have a cash register but sales items were commingled so that any separation thereof was impossible. It is agreed that an analysis of sales had to be made and that an audit could not be made from the records available. The taxpayer did not make ST-10 reports or have on hand prepaid tax stamps as required by law. The bookkeeper's actual knowledge as to how appellant conducted his business appears to have been derived from what he had been told and an occasional hour's sojourn in the tavern when business was slack. Appellant complains that the examiner failed to consider his records. This refers, undoubtedly, to certain exhibits offered by the taxpayer. These documents are liquor purchase invoices, and the bookkeeper's analysis of what he says is the actual result of appellant's operation. These analytical documents attempt to display the bookkeeper's version of his employer's busi-

ness. They are not Mullec's records, and they were not furnished the examiner during the course of the audit.

In the making of the audit the examiner accepted the vendor's record of gross sales over the entire period of the audit. This figure amounts to $92,732.52. Due to amendment of the Sales Tax Act, which effected reduction of taxable sales from 9c and under to 41c and under, the audit was divided into three periods—(1) June 10, 1945, to June 30, 1948, (2) July 1, 1948, to December 31, 1948, (3) January 1, 1949, to December 31, 1952. The examiner did not accept appellant's liquor purchase invoices but, in order that this figure might be accurate, resorted to his purchase account at a state liquor store where all purchases had been made. From this store record of all brands of liquor purchased, the quantity and price paid therefor, were correctly ascertained (see page 312 of the transcript). The selling price of all liquor purchased and sold was obtained from the vendor. The examiner's analysis of these figures, applying the figures obtained from the liquor chart (appellant's Exhibit 9), per example, a fifth of liquor containing 25-3/5 oz., produced 29.24 drinks of 7/8 oz. Drinks selling for 25c sold for $7.31, and produced a mark up of 174%. The bookkeeper says that from his analysis 142% would be a fair mark up.

Appellant's bookkeeper asserts that only 28.8 drinks of 7/8 oz. can be obtained from a fifth of liquor, and that his employer fills the glass to the brim, which is of course pure hearsay, and that in truth he is only able to obtain from 26 to 27 drinks of 7/8 oz. from a fifth of liquor. The question of the number of drinks obtainable from a fifth of liquor and the price charged creates the principal ground of complaint.

In making this audit the examiner found that appellant's mark up on beer sales was 58.5%. Food consumed on the premises was given a mark up of 50%. The usual mark up in like enterprises is 100%. Cigaretts were given the usual mark up of 18%. Cigars and tobacco had the usual mark up of 10%.

The departmental examiner testifies (page 63 of the record):

"Q. Now, after July 1, 1948, the only taxable merchandise in this audit are sales of liquor in excess of 41 cents; is that correct?

"A. That is true.

"Q. Now, prior to June 30, 1948, liquor, food, and miscellaneous was taxed; is that correct?

"A. That is true."

It appears unquestioned that all sales made during the first period were over 9c and taxable. Appellant's bookkeeper testifies that it was Mullec's business practice not only to fill the 7/8 oz. glass to the brim, but that throughout the audit period he continued to maintain a charge that produced a minimum profit; that he relied upon quantity sales rather than higher prices; and that liquor sales were nearly all singles with few doubles.

Appellant's witness testifies (page 40 of the record):

"A. Sales are not broken down anywhere in any report, other than on the tapes.

"Q. In other words, to determine the exempt sales, and taxable sales, you'd have to make an analysis?

"A. You'd have to make an analysis, and some guesswork; yes. Our best guess on it.

"Q. There are no definite records from where that can be obtained?

"A. No, sir.

"Q. Now, on your Exhibit 1, which is a list of purchases of liquor, I notice that you purchased Fine Arts whiskey at $4.14 a fifth, and you sell it for 25 cents; wherein you purchase Canadian Club and V. O. at $4.26 and $4.30, and you sell it for 35 cents and 40 cents.

"Can you tell this Board why Fine Arts whiskey, an expensive whiskey, is sold for 25 cents?

"Q. I see Four Roses purchased for $3.44 a fifth, and that sells at 35 cents, which is almost 75 cents a bottle less than the Fine Arts, which is sold for 25 cents.

"A. You will see a lot of variances in a lot of drinks there. You will see in the 25 cent price range, that probably people are getting 35 cents for. He's selling it for a quarter, but that's what he wants to do; and that's what he is doing."

On pages 42, 43 and 44 of the record this bookkeeper is interrogated concerning what certain cash register tape furnished the examiner by the vendor discloses. He says that he is "amazed" by what this tape (Appellant's Exhibit 6) discloses. This tape covers 43 days covering three periods. The examiner found that 47% of the sales were over 41 cents. The bookkeeper recognizes this as "damaging evidence." "Nevertheless, I presented it as it is. I don't examine it beforehand." When asked what percentage the tape showed for April he answers: "Well, it doesn't show very good." This bookkeeper was further asked if he ever made a liquor analysis based on sales as shown by cash register tape and cost of merchandise sold. His answer to this question is "No." His analysis appears, therefore, to be based solely upon estimate, "guesswork," and from what the vendor told him. These tapes, Appellant's Exhibit 6 and many others, were available to him.

From the bookkeeper's noted testimony, and other matters found in his evidence, we are far from convinced that his analysis of his employer's business is a true and correct version based upon fact and records available. In his brief filed he practically concedes that the assessment could properly have been returned against the taxpayer for $580.68. He asks this board in substance to disregard appellant's tape records, to discountenance fair and repeatedly approved accounting practices that have proved their worth, to overlook appellant's legal remissions, to accept his analysis of his employer's practices which disregard facts and is predicated on guess and the word of the taxpayer who fails to appear and subject himself to cross-examination.

For a period of seven years appellant has practically disregarded all Sales Tax Laws. He now asks this board to take the word of his bookkeeper

who testifies from what he has been told, and from which he guesses what the facts ought to be. **Obert v. Evatt, 144 Oh St 492, 30 O. O. 133,** is in point:

"Where the amount of vendor's gross receipts from sales are known, the burden rests upon such vendor to show what part, if any, of such receipts resulted from sales of tax-exempt merchandise."

The vendor has failed to sustain that burden and has failed to produce any creditable evidence in support of his claim.

The board finds that the audit made and the order issued thereon is in all respects in accordance with law and is not unreasonable. The order is affirmed.